UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                           Case No: 8:22-cr-363-2-KKM-JSS

VERONICA ESTEFANIA RODRIGUEZ PINUELA
_____

# ORDER

Defendant Veronica Estefania Rodriguez Pinuela moves to suppress all evidence obtained during a traffic stop, including cocaine, fentanyl, firearms, ammunition, miscellaneous drugs, residue, paraphernalia, money, and her statements. Mot. to Suppress (Doc. 52). On March 8, 2022, law enforcement stopped Rodriguez Pinuela while she was driving her SUV and thereafter searched her vehicle and two bags on the front passenger floorboard. Because law enforcement observed Rodriguez Pinuela commit a traffic infraction, the traffic stop was reasonable. And under the automobile exception, the search of Rodriguez Pinuela's vehicle was also reasonable. Thus, her motion to suppress is denied.

I. BACKGROUND[1]

On March 8, 2022, Tampa Police Officers Maceo and Sousa were conducting surveillance near Central Avenue and Sligh Avenue East in Tampa, Florida. Hr'g Tr. at

---

[1] The facts recounted herein are the Court's factual conclusions based on witness testimony and video evidence presented at the July 11, 2023 evidentiary hearing.

6:2-7:19. The officers observed Rodriguez Pinuela pull her BMW SUV into a gas station. *Id.* at 8:14-9:9. Rodriguez Pinuela was the driver and owner of the vehicle, while codefendant Elias Xavier Rosario Torres occupied the passenger seat. *Id.* at 18:11-20, 37:22-24.

The officers observed Rosario Torres exit the vehicle and approach a nearby Mercedes Benz. *Id.* at 10:2-12. Rosario Torres and the driver of the Mercedes then went off to the side of the car and conversed for ten or fifteen minutes. *Id.* at 10:12-15. The officers recognized Rosario Torres from a prior investigation in which they had a warrant for his arrest for aggravated assault with a firearm. *Id.* at 35:12-16. Officer Maceo also noticed a "blunt" tucked behind Rosario Torres's ear, which he testified is commonly used to smoke marijuana. *Id.* at 11:5-11. After the meeting between Rosario Torres and the driver of the Mercedes concluded, Rodriguez Pinuela and Rosario Torres left the gas station in the SUV. *Id.* at 18: 5-20.

Officer Maceo followed the SUV and radioed for backup units to assist in making a traffic stop, which Sgt. Jenne responded to. *Id.* at 18:21-19:23, 46:23-47:3. While driving westbound on the Courtney Campbell Causeway, the SUV entered a turn only lane for the Westin Tampa Bay Hotel. *Id.* at 21:9-15. Instead of turning, Rodriguez Pinuela proceeded straight through into the emergency lane and took the following turn onto Rocky Point Drive. *Id.* at 21:13-17. Sgt. Jenne, who was directly behind the SUV, observed Rodriguez

Pinuela drive in the emergency lane and followed her, with Officers Maceo and Sousa close behind. *Id.* at 23:2-8, 69:5-21.

The officers followed the SUV to the parking lot of a Bahama Breeze restaurant. *Id.* at 22:20-23:11. Sgt. Jenne saw Rosario Torres through the open passenger window take "a long drag" from the apparent marijuana blunt. *Id.* at 71:5-9. Once Rodriguez Pinuela backed into a parking spot, Sgt. Jenne pulled his car in front of the SUV, activated his lights, and initiated a traffic stop. *Id.* at 71:10-15.

Sgt. Jenne then approached Rosario Torres at the passenger side of the SUV. *Id.* at 72:8-15. He noticed the scent of marijuana and testified that Rosario Torres was "actively smoking" the blunt and even exhaled "a plume of smoke" into his face. *Id.* at 72:16-23. As Officer Maceo approached the SUV to join Sgt. Jenne, he saw "billows of smoke" wafting through the open window and smelled the odor of burnt marijuana. *Id.* at 24:14-25.

Officer Maceo took the blunt from Rosario Torres and asked him if he had a medical marijuana card. *Id.* at 25:1-6. Rosario Torres claimed that he did, but he was unable to produce it. *Id.* at 25:4-13, 54:7-10. A later investigation confirmed that he did not have a medical marijuana card. *Id.* at 25:9-13. When the officers confronted Rosario Torres about smoking marijuana in the car, he responded by saying "my bad." Gov't Ex. 3 (Maceo Body Camera Footage) at 2:01-2:12. The officers also told Rosario Torres that he should know from his prescription that he cannot smoke marijuana in a vehicle, and he

3

responded again "my bad, sir." *Id.* at 2:20-2:30. Officer Maceo testified that even if a person has a medical marijuana prescription, it is still a criminal violation under Florida law to smoke marijuana in a vehicle. Hr'g Tr. at 25:14-20; *see also* Fla. Stat. § 381.986(k).

During his interaction with Rosario Torres, Sgt. Jenne noticed Rosario Torres "target gaze" eleven times at a bag on the SUV's passenger floorboard. Hr'g Tr. at 74:5-8, 82:20. Sgt. Jenne described target gazing as "subconscious behavior of people who are concerned about items in the presence of law enforcement." *Id.* at 74:10-11. He also testified that he was aware Rosario Torres was previously convicted of multiple crimes and accused of a violent public shooting, which increased his concern that there was potentially a firearm in the bags that could be used against them. *Id.* at 74:22-75:11, 84:6-12. Officer Maceo then handcuffed Rosario Torres and removed him from the SUV. *Id.* at 75:14-16. As Rosario Torres exited the vehicle, Rodriguez Pinuela reached for the bags on the passenger floorboard, though Sgt. Jenne retrieved the bags first. *Id.* at 76:12-22. When Sgt. Jenne removed the bags from the SUV, Rodriguez Pinuela exclaimed multiple times that the bags were hers and expressed her frustration that Sgt. Jenne took them. *Id.* at 76:19-24.

Sgt. Jenne opened the bags and discovered cocaine. Hr'g Tr. at 77:3-6. Law enforcement then searched the SUV and found ammunition, marijuana, cocaine, ketamine, cash, and drug paraphernalia. Mot. to Suppress at 5. A later search of the bags revealed a

4

Glock pistol underneath the drugs. *Id.* On July 11, 2023, I held a hearing on the suppression motion.

## II. LEGAL STANDARDS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. For Fourth Amendment purposes, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). The reasonableness of the stop does not depend on the actual motivations of the officers executing the stop. *Id.* at 813.

In general, searches conducted without approval of a judge or magistrate "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal quotations and citation omitted). One of these exceptions is the automobile exception. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Under the automobile exception, law enforcement may conduct a warrantless search if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Id.* A vehicle is readily mobile if it is "operational" or "reasonably appear[s] to be capable of functioning." *Id.* at 1293 n. 6. Probable cause exists if "under the totality of the circumstances, there is a fair

5

probability that contraband or evidence of a crime will be found in the vehicle." *United States v. Tamari*, 454 F.3d 1259, 1264 (11th Cir. 2006) (internal quotations and citation omitted). In determining whether probable cause exits, an officer may draw inferences based on his own experience. *Ornelas v. United States*, 517 U.S. 690, 700 (1996).

III.  ANALYSIS

Rodriguez Pinuela argues that the evidence obtained by law enforcement should be suppressed for two reasons. First, she claims that she and the other occupants of the SUV were subject to an unreasonable seizure at the time of the traffic stop because law enforcement lacked probable cause to believe a traffic violation had occurred. Mot. to Sup. at 2. Second, she argues that it was objectively unreasonable for the officers to conduct a warrantless search of the bags, and any evidence found should be suppressed as fruits of an unlawful search. *Id.* Neither argument is persuasive.

   A.  **Law Enforcement had Probable Cause to Initiate the Traffic Stop**

A traffic stop is "reasonable" under the Fourth Amendment if the officers had "probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. Under Florida law, "drivers of vehicles shall obey the directions of every [traffic control] device" and failure to do so "is a noncriminal traffic infraction." Fla. Stat. § 316.089(3), (5). Traffic control devices are "[a]ll signs, signals, markings, and devices . . . placed or erected

6

by authority of a public body or official having jurisdiction for the purpose of regulating, warning, or guiding traffic." Fla. Stat. § 316.003(50).

Rodriguez Pinuela concedes that she drove through a turn only lane into an emergency lane on the Courtney Campbell Causeway. Mot. to Supp. at 3; *see also* Hr'g Tr. at 21:13-17. And even if she contested this fact, I find Officer Maceo's testimony credible that she drove unlawfully through the emergency lane. The turn-only arrow painted on the highway and the lines designating an emergency lane both fit the definition of "markings" placed on the road "for the purpose of regulating, warning, or guiding traffic." Fla. Stat. § 316.003(50). By failing to turn and instead driving straight through into an emergency lane, Rodriguez Pinuela violated the applicable traffic control markings, which is a noncriminal traffic infraction. Thus, after observing Rodriguez Pinuela's maneuver, law enforcement had probable cause to believe a traffic violation had occurred, and the traffic stop was reasonable under the Fourth Amendment.

B. The Warrantless Search of the Vehicle was Reasonable

Under the automobile exception, a warrantless search of a vehicle is permissible if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Lindsey*, 482 F.3d at 1293. Regarding the second prong, probable cause exists if "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." *Tamari*, 454 F.3d at 1264 (internal quotations and

7

citation omitted). At the time of the search, it is undisputed that Rodriguez Pinuela's SUV was operational and therefore readily mobile. Thus, the constitutionality of the search turns on whether law enforcement had probable cause to search the vehicle.

The government first argues that because Sgt. Jenne watched Rosario Torres smoke the blunt and smelled the odor of marijuana, the officers had probable cause to search the car. Hr'g Tr. at 71:5-1, 72:16-23, 110:16-111:11. Officer Maceo also testified that he saw a blunt behind Rosario Torres's ear at the gas station, he saw smoke billowing from the passenger side of the SUV, and he smelled the odor of burnt marijuana. *Id.* at 11:5-11, 24:18-25. "[T]he smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle." *Merricks v. Adkisson*, 785 F.3d 553, 560 n. 3 (11th Cir. 2015); *see also United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc); *United States v. Johns*, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband."). Rodriguez Pinuela counters that the odor of burnt marijuana is no longer sufficient probable cause to search a vehicle because as of 2020, it is legal under Florida and federal law to smoke and possess hemp. Mot. to Suppress at 8. She argues that because the smell of burning marijuana and burning industrial hemp are indistinguishable, it would be impossible to know whether Rosario Torres was smoking marijuana or hemp without a

8

laboratory test. *See id.* at 7; Hr'g Tr. at 40:22-41:6. Common sense, the officers' experience, and Rosario Torres's own statements cut the other way.

First, Rosario Torres's statements all but foreclose the possibility that he was smoking hemp instead of marijuana. When confronted by law enforcement for smoking marijuana in the car, Rosario Torres said "my bad" and did not assert in defense that the substance was hemp. Gov't Ex. 3 (Maceo Body Camera Footage) at 2:01-2:12. Rather, he falsely claimed that he had a medical marijuana card. As the officers further pressed Rosario Torres that smoking marijuana in a vehicle is still illegal even with a medical marijuana prescription, Rosario Torres again responded by saying "my bad, sir." *Id.* at 2:20-2:30. Rosario Torres thus implicitly admitted the substance was marijuana, and there is no evidence to support the claim that the substance was hemp. And even if Rosario Torres had made no statements, common sense (and the officers' experience) indicates that "blunts" are not normally hemp but rather what the average person would suspect: a marijuana joint. Indeed, upon first seeing Rosario Torres at the gas station, Officer Maceo observed what appeared to be a marijuana blunt behind his ear. When Officer Maceo was asked whether he had ever seen hemp rolled into a brown cigarette like the "blunt" he observed, he categorically responded no. Hr'g Tr. at 42:12-19. Thus, the fact that the officers smelled the odor of burnt marijuana, witnessed smoke coming from the passenger side window, and saw Rosario Torres take "a long drag" from what Rosario Torres did not

9

contest was a marijuana blunt while in the vehicle is sufficient probable cause alone for the search of the vehicle.

Furthermore, the officers knew that Rosario Torres was previously wanted for aggravated assault with a firearm, and Sgt. Jenne saw Rosario Torres "target gaze" eleven times at a bag in the car. *Id.* at 35:12-16, 79:11-20, 82:17-20. This only added to the above evidence and thus produced a "fair probability that contraband or evidence of a crime [would] be found in the vehicle." *Tamari*, 454 F.3d at 1264 (internal quotations and citation omitted). Thus, under the totality of the circumstances known to the officers at the time, the search was reasonable under the automobile exception of the Fourth Amendment.

## IV. CONCLUSION

Accordingly, Defendant's Motion to Suppress (Doc. 52) is **DENIED**.

**ORDERED** in Tampa, Florida, on July 27, 2023.

Kathryn Kimball Mizelle
United States District Judge

10